UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **CATHERINE MAZZOLA, M.D., NEW JERSEY PEDIATRIC NEUROSURGICAL ASSOCIATES, LLC, and NEW JERSEY PEDIATRIC NEUROSURGICAL INSTITUTE, LLC**<br><br>                              Plaintiffs,<br><br>                    v.<br><br>**AMERIGROUP NEW JERSEY, INC. d/b/a AMERIGROUP COMMUNITY CARE, ABC COMPANIES 1-10, AND JOHN DOES 1-100,**<br><br>                              Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Civil Action No. 2:17-cv-05332 (SDW-LDW)<br><br>*Filed Via ECF* |

---

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
CROSS-MOTION TO AMEND AND REMAND AND IN OPPOSITION TO
DEFENDANT AMERIGROUP'S MOTION TO DISMISS

---

**Table of Contents**

Table of Authorities ....................................................................................................II

Preliminary Statement...............................................................................................1

Statement of Facts.....................................................................................................3

Argument

    Point I:      STANDARD OF REVIEW .......................................................6

    Point II:     PLAINTIFFS SHOULD BE PERMITTED TO AMEND THEIR
                  COMPLAINT AND THIS CASE SHOULD BE REMANDED TO
                  NEW JERSEY SUPERIOR COURT .........................................................7
                  A. Leave to File Amended Complaint ..................................................7
                  B. This Case Should be Remanded to New Jersey Superior Court .......9

    Point III:    THERE IS NO EXHAUSTION OF REMEDIES REQUIREMENT.......11

    Point IV:   PLAINTIFFS' PROPOSED AMENDED COMPLAINT
                  SUFFICIENTLY ALLEGES EXHAUSTION OF REMEDIES..............17

    Point V:     NEW JERSEY'S HINT ACT AND REGULATIONS
                  DO NOT FORECLOSE PRIVATE RIGHTS OF ACTION ....................19

    Point VI:   PLAINTIFFS HAVE SUFFICIENTLY ALLEGED VIOALTIONS
                  OF THE HINT ACT AND REGULATIONS ...........................................24

    Point VII:  PLAINTIFFS ADEQUATELY PLEAD ESTOPPEL..............................26

    Point VIII: PLAINTIFFS HAVE ADEQUATELY PLEAD UNJUST
                  ENRICHMENT AND *QUANTUM MERUIT*...........................................29

Conclusion    .....................................................................................................31

**Table of Authorities**

<u>**Cases**</u> <span style="float:right"><u>Page</u></span>

*Abbott v. Burke*, 100 N.J. 269, 297 (1985) .................................................................. 17-18

*A.P. by S.P. v. Allegro School, Inc.*, 2017 WL 4330363 at *8 (D.N.J. 2017)...................10

*Aponte-Correa v. Allstate Ins. Co.*, 162 N.J. 318, 325 (2000)...........................................14

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ........................................................................6

*Ass'n of New Jersey Chiropractors v. Aetna*,
   2012 WL 1638166 at *11 (D.N.J. 2012) ................................................................ 29-30

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)...................................................6

*Bermingham v. Sony Corp. of Am., Inc.*, 820 F. Supp. 834, 855 (D.N.J. 1992),
   *aff'd*, 37 F.3d 1485 (3d Cir. 1994) ..............................................................................10

*City of Atlantic City v. Laezza,* 80 N.J. 255, 265 (1979) ...................................................17

*Coyle v. Bd. of Chosen Freeholders*, 170 N.J. 260, 267 (2002) ........................................23

*Culinary Servo Of Del. Valley, Inc.* v. *Borough of Yardley*,
   385 Fed. Appx. 135, 146 (3d Cir. 2010)........................................................................8

*Empresa Cubana del Tabaco v. Culbro Corp.*, 541 F.3d 476, 478 (2d Cir. 2008) ..... 14-15

*Foman* v. *Davis,* 371 U.S. 178, 182 (1962) ....................................................................... 7-8

*Forest Guardians v. Babbitt*, 174 F.3d 1179, 1187 (10th Cir. 1999) ...............................15

*Harrison Beverage Co.* v. *Dribeck Importers, Inc.*,
   133 F.R.D. 463, 468 (D.N.J. 1990)................................................................................9

*In re Avandia Marketing, Sales Practices & Prod. Liab. Litigation*,
   685 F. 3d 353, 355 (3d Cir. 2012)..................................................................................3

*Jama v. Immigration & Customs Enforcement*, 543 U.S. 335, 346 (2005).......................14

*Kirsch v. Horizon*, Docket No. ESX-L-4216-05, N.J. Sup. Ct.,
   Essex County, Oct. 21, 2005...........................................................................................22

*Marlowe Patent Holdings LLC* v. *Dice Electronics LLC*,
   293 F.R.D. 688, 695 (D.N.J. 2013)..................................................................................9

*Med. Soc'y of N.J. v. AmeriHealth HMO, Inc.*,
    376 N.J. Super. 48, 58-59 (App. Div. 2005)................................................................23

*MHA, LLC v. Healthfirst, Inc.*, 2015 WL 858051 (D.N.J. 2015) ..............4-5, 10-12, 31-32

*MHA, LLC v. Healthfirst, Inc.*, 629 Fed. Appx. 409 (3d Cir. 2015)..........4-5, 10-12, 31-32

*MHA, LLC v. Healthfirst, Inc.*, 2016 WL 3034012 (N.J. Super. 2016)............11-12, 31-32

*MK Strategies, LLC v. Ann Taylor Stores Corp.*,
    567 F. Supp. 2d 729, 736 (D.N.J. 2008) .....................................................................30

*N.J. Dental Ass'n v. Horizon Blue Cross Blue Shield of N.J.*,
    2014 WL 2515689 at *6 (App. Div.), <u>cert</u>. <u>denied</u>, 219 N.J. 630 (2014)............... 15-16

*North Jersey Brain & Spine Center v. Health Net. Inc.*,
    Docket No. BER-L-5421-08, N.J. Sup. Ct., Bergen County, August 26, 2009..........22

*Palisades Medical Center v. Horizon NJ Health*,  Docket No. HUD-L-2549-13,
    N.J. Sup. Ct., Hudson County, February 13, 2015 .....................................................12

*Patel v. Contemporary Classics of Beverly Hills,* 259 F.3d 123, 126 (2d Cir. 2001)..........6

*R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*,
    168 N.J. 255, 272 (2001) .............................................................................................20

*Royal Assoc. v. Concannon*, 200 N.J. Super. 84 (App. Div. 1985) ..................................27

*Scocozza v. New Jersey*, 2014 WL 6674453, at *4 (D.N.J. Nov. 25, 2014).....................17

*Simonson v. Hertz Corp.,* 2011 WL 1205584 *7 (D.N.J. 2011).........................................30

*State v. Burford*, 163 N.J. 16, 20 (2000).........................................................................14

*State v. U.S. Steel Corp.,* 22 N.J. 341, 358 (1956)...........................................................27

*Summer Cottagers' Ass'n of Cape May v. City of Cape May*,
    19 N.J 493, 503-04 (1955) .................................................................................. 26-27

*Sutter v. Horizon*, Docket No. ESX-L-3685-02, N.J. Sup. Ct., Essex County,
    Feb. 13, 2003), <u>aff'd in part</u>, 406 N.J. Super. 86, 95 (App. Div. 2009),
    <u>aff'd</u> <u>after</u> <u>remand</u>, 2012 WL 2813813 (App. Div. 2012), <u>cert</u>. <u>denied</u>,
    213 N.J. 57 (2013) .................................................................................... 12, 18, 20-23

*Swede v. City of Clifton,* 22 N.J. 303, 315 (1956)............................................................17

*United States v. Myers*, 106 F.3d 936, 941 (10th Cir. 1997) ............................................15

*Velazquez v. Jimenez*, 172 N.J. 240, 257 (2002)..............................................................16

*Warnig v. Atlantic City Special Servs.*, 363 N.J. Super. 563, 571 (App. Div. 2003).........16

## Statutes

28 U.S.C. §1331 ...............................................................................................................4

28 U.S.C. §1367(c)(3)....................................................................................................4, 10

*N.J.S.A.* §§17B:30-51 to 30-54 ................................................................ 13, 19-20, 24

*N.J.S.A.* §26:2J-8.1(e)(1)............................................................................... 13-14

## Rules and Regulations

Fed. R. Civ. P. 8(d)(2)....................................................................................................30

Fed. R. Civ. P. 8(d)(3)....................................................................................................30

Fed. R. Civ. P. 12(b)(6)................................................................................................6, 8

Fed. R. Civ. P. 15(a)(2)..................................................................................................7

N.J. Court R. 4:5-8(b) ....................................................................................................17

*N.J.A.C.* §11:22-5.8................................................................................. 19-20, 25

*N.J.A.C.* §11:24-5.1................................................................................. 19-20, 25

*N.J.A.C.* §11:24-5.3................................................................................. 19-20, 25

## Other Sources

45 N.J. Reg. 651(a) (Mar. 18, 2013) ..............................................................................16

Statement, Senate Bill No. 2824, State of New Jersey,
   211th Legislature (Dec. 5, 2005) ................................................................................15

*In re Violations of Aetna*, No. A07-59 (DOBI Sept. 2007) ..............................................20

DOBI Bulletin No: 06-16, Health Claims Authorization,
    Processing and Payment Act, at *3, n.3 (N.J. DOBI July 10, 2006) ...........................16

**<u>Preliminary Statement</u>**

Although the health care laws underlying this dispute can be complex, this case is about nothing more than fair compensation for the specialized pediatric neurosurgical services provided by Plaintiffs. Plaintiff Dr. Catherine Mazzola is one of only two board certified pediatric neurosurgeons in the State of New Jersey. She literally is a brain surgeon and uses her talents to save children's lives. The additional Plaintiffs are Dr. Mazzola's practice entities. Defendant Amerigroup New Jersey, Inc. ("Defendant") operates a managed health care plan as an insurer under New Jersey's Medicaid program. Defendant has engaged in years of systematic non-payment or underpayment for Plaintiffs' services, jeopardizing the care afforded to its enrollees and the quintessential purpose of the Medicaid system. From 2012 through 2014, Defendant paid Plaintiffs approximately $80,000 against $1.5 million in services rendered. That translates to 5¢ for every dollar billed. There is no way that a pediatric neurosurgeon (or any other physician) can financially subsist under such conditions, and Defendant's failure to pay its obligations jeopardizes the availability of quality healthcare for those who need it most. That is especially true in this case because the highly specialized care Dr. Mazzola provides cannot be found anywhere else in northern New Jersey.

The main thrust of Defendant's argument is that this case is barred because Plaintiffs failed to exhaust their administrative remedies. There is no exhaustion requirement under the New Jersey Medicaid statutory scheme - it is expressly permissive at the election of the provider. Inexplicably, in an almost identical case before this Court, the plaintiff failed to cite the relevant statutory language or make that argument. This led to an unfortunate result that is not in harmony with the plain language of the applicable

statute.  Equally important, Plaintiffs did avail themselves of Defendant's internal appeal process, without success.   Defendant's additional argument, that the New Jersey Medicaid statutes at issue do not create a private right of action, is equally flawed.  New Jersey courts repeatedly hold, and the New Jersey Department of Banking and Insurance agrees, that a healthcare provider has a private right of action where a Medicaid insurer fails to reimburse providers timely or adequately.

Plaintiffs concede that the first cause of action set forth in their complaint for a federal statutory violation should be dismissed.  As Defendant correctly points out, the Emergency Medical Treatment and Active Labor Act ("EMTALA") is only enforceable against hospitals.  Plaintiffs are cross-moving for leave to file an Amended Complaint in order to withdraw that claim and to specifically allege exhaustion of remedies (although Plaintiffs do not concede that doctrine is applicable).   (The proposed Amended Complaint also corrects an error in the caption as to correct name of Dr. Mazzola's current practice entity.)  Withdrawal of that claim deprives this Court of subject matter jurisdiction and this case should be remanded to New Jersey Superior Court.  As the Court may be aware, the main issues in this case are currently on appeal in New Jersey Superior Court, Appellate Division.  New Jersey should be afforded the opportunity to conclusively rule on these state law issues.

**Statement of Facts**

Dr. Mazzola is a board certified pediatric neurosurgeon.  Her practice was initially conducted under Plaintiff New Jersey Pediatric Neurosurgical Associates, LLC.  The practice subsequently changed to New Jersey Pediatric Neuro*science*  Institute, LLC.[1] Defendant Amerigroup is a New Jersey licensed health management organization ("HMO") and managed health care plan insurer (Managed Care Organization or "MCO") under New Jersey's Medicaid program.  Dr. Mazzola and her practice do not have a provider contract with Defendant and are therefore considered out-of-network providers ("OON").  Defendant receives Medicare capitation payments from the New Jersey Center for Medicare and Medicaid Services ("CMS") and assumes full responsibility for paying the medical costs of its enrollees.[2]  A capitation payment is a set price paid to the MCO by CMS per member, per month, regardless of whether that member incurs any covered health related expenses.

From 2012 through 2014, Plaintiffs provided medical services to Defendant's Medicaid enrollees.  These services included (i) emergency services, (ii) post-stabilization services, (iii) out-of-network services, (iv) pre-authorized services, and (v) services provided pursuant to express, limited contracts.  Plaintiffs' services consist almost exclusively of pediatric neurosurgeries, which are complex, difficult, time consuming, and dangerous.  Plaintiffs timely submitted claims for the services they provided.  Those claims were wrongly and systematically denied or underpaid by Defendant.  Between 2012 and 2014, Plaintiffs billed approximately $1.5 million for

---

[1] The original complaint erroneously refers to this Plaintiff as New Jersey Pediatric Neuro*surgical*  Institute, LLC.
[2] *See* *In re Avandia Marketing, Sales Practices & Prod. Liab. Litigation*, 685 F. 3d 353, 355 (3d Cir. 2012).

surgeries and associated services and received only $80,000 in payments. That amounts to one nickel for every dollar billed (or 5%). As this Court knows, Plaintiffs are not alone. The trend in non-payment and underpayment by MCOs has been identified as the primary threat to the delivery of healthcare in New Jersey.[3] At a payment rate of 5¢ on the dollar, Dr. Mazzola simply cannot afford to continue to do business with Amerigroup or treat its enrollees. Since she is the only board certified pediatric neurosurgeon in Northern New Jersey, Amerigroup's Medicaid enrollees are not receiving the quality healthcare New Jersey's Medicaid scheme was designed to provide.

This case was originally filed in New Jersey Superior Court, Morris County. Defendant filed a notice of removal to this Court dated July 21, 2017. Defendant's basis for removal was this Court's federal question jurisdiction (28 U.S.C. §1331) based on Plaintiff's claim under EMTALA. As noted below, Plaintiffs concede that their EMTALA claim cannot be sustained and it has been withdrawn from the proposed Amended Complaint. As a result, the Court should grant Plaintiffs' cross-motion to amend Plaintiffs' Complaint and remand this case to New Jersey Superior Court. Since the Court will no longer have subject matter jurisdiction over this case, it should decline to rule on Defendant's motion to dismiss, leaving those issues to be decided by the courts of New Jersey. As the Court is aware, the almost identical case of *MHA, LLC v. Healthfirst, Inc.*, 2015 WL 858051 (D.N.J. 2015), *vacated on other grounds*, 629 Fed. Appx. 409 (3d Cir. 2015)("*MHA I*") was remanded to New Jersey Superior Court by

---

[3] *See generally* Galewitz, Phil, *Study: Nearly A Third Of Doctors Won't See New Medicaid Patients, Kaiser Health News*, available at https://khn.org/news/third-of-medicaid-doctors-say-no-new-patients/ (last visited November 2, 2017); Sack, Kevin, *As Medicaid Payments Shrink, Patients Are Abandoned*, NY TIMES (March 15, 2010), available at http://www.nytimes.com/2010/03/16/health/policy/16medicaid.html (last visited November 2, 2017).

direction of the Third Circuit Court of Appeals.   The Superior Court subsequently dismissed the case, citing this Court's February 27, 2015 opinion.   That determination was appealed to and is pending before the Superior Court, Appellate Division.   Although not brought to the Court's attention in *MHA I*, the administrative remedies provided by New Jersey's Medicaid scheme are absolutely permissive.   Providers are not required to internally appeal the determinations of MCOs or engage in binding arbitration prior to bringing suit.

Given the Court's familiarity with the issues, Plaintiffs will not further restate the background of New Jersey's Medicaid Managed Care Program.   One point does need to be made.   Contrary to Defendant's statement, New Jersey MCOs are *absolutely* obligated to pay OON providers for health care services rendered, whether emergency or non-emergency.   Defendant's Brief at p. 4.   The MCO provider contract, relied upon by Defendant, specifically provides "[t]he [MCO] ***shall*** pay for services furnished by non-participating [OON] providers to whom an enrollee was referred, even if erroneously referred, by his/her [primary care physician] or network specialist."   State of New Jersey Department of Human Services Division of Medical Assistance and Health Services Contract to Provide Services ("MCO Contract") at Article 4.1.1(I)(1). [4]   (Emphasis added).   As alleged in Plaintiffs' Complaint and proposed Amended Complaint, many of Defendant's enrollees were either (i) referred to Plaintiffs for care, (ii) pre-authorized for care; or (iii) covered by an express, limited contract between Plaintiffs and Defendant. The MCO Contract further provides, "[a]s a general rule, if a participating ***or non-***

---

[4] The MCO Contract spans almost 900 pages (including attachments).   The relevant portion of the MCO Contract is attached to the accompanying Declaration of Jeremy Klausner ("Klausner Decl.") as **Exhibit A**.

*participating* provider renders a covered service to a managed care enrollee...the provider's sole recourse for payment...is the [MCO] Contractor...."  MCO Contract at Article 4.1.1(I)(4).  (Emphasis added).

## Argument

### Point I

### STANDARD OF REVIEW - DEFENDANT'S MOTION TO DISMISS

A motion to dismiss is properly evaluated under the familiar Fed. R. Civ. P. 12(b)(6) standard.  Pursuant to Rule 12(b)(6), courts "must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor."  *Patel v. Contemporary Classics of Beverly Hills,* 259 F.3d 123, 126 (2d Cir. 2001).  "Factual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007), and the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)(citation omitted).

Plaintiff's' Complaint and proposed Amended Complaint ("Complaint") contain sufficient factual allegations that set forth their right to relief above the speculative level. The allegations set forth the New Jersey Medicaid statutory scheme, the specific regulations violated by Defendant, and the facts necessary to establish that Plaintiffs provided services to Defendant's enrollees and were either not paid or were grossly underpaid for those services.  Plaintiffs' proposed Amended Complaint adds the allegations regarding exhaustion of remedies, which, as argued below, are unnecessary because exhaustion of remedies is not required.  Defendant's motion to dismiss should therefore be denied in its entirety.

**Point II**

PLAINTIFFS SHOULD BE PERMITTED TO AMEND
THEIR COMPLAINT AND THIS CASE SHOULD BE
REMANDED TO NEW JERSEY SUPERIOR COURT

As discussed in detail below, Plaintiffs' Complaint sufficiently asserts causes of action against Defendant for violation of several of New Jersey's health care related statutes, as well as causes of action sounding in quasi-contract. Plaintiffs, however, agree that their claim under the Federal Emergency Medical Treatment And Labor Act ("EMTALA") cannot be sustained because Plaintiffs are not a hospital. Plaintiffs also seek leave to add causes of action for breach of contract and to add factual allegations regarding the submission of their unpaid and underpaid claims through Amerigroup's internal appeal process.[5] A copy of Plaintiffs' proposed Amended Complaint is attached to the accompanying Klausner Decl. as Exhibit B.

A.     Leave to File Amended Complaint

Pursuant to Fed. R. Civ. P. 15(a)(2), leave to amend a pleading should be granted "freely...when justice so requires." There is a strong presumption in favor of permitting amended pleadings absent underlying justification. "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman* v. *Davis*, 371 U.S. 178, 182 (1962). The Supreme Court went on to hold that even though District Courts have discretion in whether to allow amendment to a pleading, there must be some justification for refusal:

---

[5] Plaintiffs contend that exhaustion of administrative remedies is not a necessary prerequisite to their statutory claims (*see* Point III), but seek to add these allegations because, even if exhaustion is determined to be necessary, Plaintiffs did avail themselves of Defendant's internal appeal process.

> In the absence of any apparent or declared reason—such as undue delay,
> bad faith or dilatory motive on the part of the movant, repeated failure to
> cure deficiencies by amendments previously allowed, undue prejudice to
> the opposing party by virtue of allowance of the amendment, futility of
> amendment, etc.—the leave sought should, as the rules require, be 'freely
> given.' Of course, the grant or denial of an opportunity to amend is within
> the discretion of the District Court, but outright refusal to grant the leave
> without any justifying reason appearing for the denial is not an exercise of
> discretion; it is merely abuse of that discretion and inconsistent with the
> spirit of the Federal Rules.

_Id_.  In this case there is no justifiable reason to deny Plaintiffs' request to amend.  They have not engaged in delay, bad faith, or dilatory tactics.  Their application for leave to amend is being made in conjunction with Defendant's motion to dismiss and directly addresses arguments made in that motion.  The proposed amended Complaint (i) omits a concededly non-viable cause of action (under EMTALA), (ii) adds claims for the breach of Defendant's Medicaid provider contract with New Jersey (of which Defendant contends Plaintiffs are a third-party beneficiary) and limited service contracts between the parties, (iii) adds a claim for promissory estoppel; and (iv) provides additional (some arguably unnecessary) factual support for Plaintiff's claims.  There is no prejudice to Defendant in allowing amendment.  The proposed Amended Complaint instead agrees with Defendant's assessment of the EMTALA claim and addresses factual allegations Defendant claims are necessary to Plaintiffs' statutory causes of action, i.e., Plaintiffs' exhaustion of administrative remedies.  Finally, Plaintiffs have not failed to cure pleading deficiencies in previously allowed amendments.

The Third Circuit holds "[i]f a complaint is a subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment, even if the party does not request leave, unless such an amendment would be inequitable or futile." _Culinary Servo Of Del. Valley, Inc._ v. _Borough of Yardley,_ 385 Fed. Appx. 135, 146 (3d Cir. 2010).  Given that

Defendant agrees with the substance of Plaintiff's proposed amendments, they are not inequitable.  Moreover, Defendant impliedly concedes that Plaintiffs' causes of actions are not futile.  A claim is only considered futile when it "is not accompanied by a showing of plausibility sufficient to present a triable issue."  *Harrison Beverage Co.* v. *Dribeck Importers, Inc.,* 133 F.R.D. 463, 468 (D.N.J. 1990).  In determining futility, courts must accept allegations in an amended pleading as true, as well as any reasonable inferences that can be drawn from them.  <u>See</u> *Marlowe Patent Holdings LLC* v. *Dice Electronics LLC,* 293 F.R.D. 688, 695 (D.N.J. 2013).

Plaintiffs' additional factual allegations and added cause of action satisfy this standard.  Defendant's main argument is that Plaintiffs failed to exhaust their administrative remedies before bringing claims under New Jersey's Medicaid statutory scheme.  The Amended Complaint alleges Plaintiffs did, in fact, avail themselves of Defendant's internal appeal process.  Defendant also explicitly states that Plaintiffs are third party beneficiaries of its Medicaid provider contract with New Jersey.  Accordingly, the proposed Amended Complaint includes a cause of action for breach of that contract.  Finally, Defendant cannot complain about the voluntary dismissal of Plaintiffs' EMTALA claim since it argues the claim is inapplicable to the facts of this case.  Given the foregoing, Plaintiffs' request for leave to file the proposed Amended Complaint should be freely granted.

B.  <u>This Case Should be Remanded To New Jersey Superior Court</u>

As noted above and in Plaintiffs' proposed Amended Complaint, their claim under EMTALA cannot stand.  Defendant is correct that claims under EMTALA can

only be maintained by hospitals.  Since Plaintiffs are not a hospital, their EMTALA claim is deficient.

As stated in Defendant's removal papers, the basis for removal was federal question jurisdiction over Plaintiffs' EMTALA claim (28 U.S.C. §1331).  The withdrawal or dismissal of Plaintiffs' EMTALA claim removes the basis for this Court's subject matter jurisdiction.  Federal courts have supplemental jurisdiction over state law claims only where there exists "some claim over which the court possessed original jurisdiction, at least at some point."  *A.P. by S.P. v. Allegro School, Inc.*, 2017 WL 4330363 at *8 (D.N.J. 2017).  "Supplemental jurisdiction...depends upon the existence of subject matter jurisdiction over other claims in the action."  *Bermingham v. Sony Corp. of Am., Inc.*, 820 F. Supp. 834, 855 (D.N.J. 1992), *aff'd*, 37 F.3d 1485 (3d Cir. 1994) (dismissing state law claims after dismissing plaintiff's Title VII claim).  The provisions conferring discretion to retain state law claims after federal claims have been dismissed implies that the federal claims must once have been substantial enough to confer original jurisdiction. *A.P. by S.P.*, 2017 WL 4330363 at *8, *citing* 28 U.S.C. §1367(c)(3) (court may decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction").  Since Plaintiffs' EMTALA claim was not substantial enough to confer jurisdiction, the remaining state law claims should be remanded to New Jersey Superior Court.

Alternatively, the Court should decline to exercise supplemental jurisdiction in this case pursuant to 28 U.S.C. §1367(c)(3).  In substance, absent the EMTALA claim, this case is almost identical to *MHA I* with respect to claims arising under New Jersey's Medicaid scheme.  As the Court knows, the Third Circuit vacated dismissal of the

10

complaint in *MHA I* with instructions to remand the case to state court. *MHA I*, 629 Fed. Appx. at 415. There should not be a different result here. The courts of New Jersey should be afforded the opportunity to opine on the issues raised, and especially the opportunity to definitively interpret the New Jersey statutes that Defendant contends require exhaustion of administrative remedies. Definitive and consistent holdings by New Jersey on this issue will provide certainty moving forward and promote judicial economy in similar cases.

## Point III

### THERE IS NO EXHAUSTION OF REMEDIES REQUIREMENT

Defendant's main argument is that New Jersey's Health Claims Authorization, Processing and Payment Act ("HCAPPA") requires Plaintiffs to exhaust their administrative remedies under that act prior to commencing this action. HCAPPA does not require service providers to avail themselves of its administrative remedies. The plain language of HCAPPA makes those remedies voluntary, not mandatory. Defendant's argument to the contrary is premised on the two recent opinions rendered in *MHA I* and *MHA II*. As this Court rendered the first relevant opinion in that case, it is familiar with the procedural history and arguments made by the parties.

Briefly, in *MHA I*, Defendants made the same argument advanced here, i.e., that HCAPPA requires medical service providers to avail themselves of its administrative remedies prior to commencing legal action. Inexplicably, MHA's counsel in that case did not refer to or argue that the plain language of the statute clearly provides that its administrative remedies are voluntary. As a result, this Court held that MHA was

required to exhaust its administrative remedies prior to commencing legal action and granted defendants' motion to dismiss. *MHA I* at *4. As the Court is also aware, the Third Circuit vacated the dismissal on jurisdictional grounds and remanded the case with instructions to return the case to New Jersey Superior Court. *MHA I*, 629 Fed. Appx at 415. Upon return to New Jersey Superior Court, Defendants moved to dismiss, again arguing, *inter alia*, failure to exhaust administrative remedies. Plaintiff's new counsel did refer to and argue the plain language of the statute. The Superior Court's opinion, despite recognizing the elective language of the statute, chose to "agree[] with the analysis of" this Court in *MHA I*. *MHA II* at * 8. In so doing, the Superior Court failed to recognize that the permissive statutory language was neither presented to nor analyzed by this Court, and wrongly concluded that "Plaintiff [was seeking] an incongruous ruling." *Id*. That was not and is not the case. The *MHA II* court also ignored other New Jersey cases reaching the exact opposite holding. In *Palisades Medical Center v. Horizon NJ Health*, Docket No. HUD-L-2549-13, N.J. Sup. Ct., Hudson County, February 13, 2015,[6] at p. 10, the court held "the statute does not mandate that a health care provider must utilize these [administrative remedy] mechanisms nor submit its dispute to arbitration. The *Palisades* court went on to agree with Plaintiffs' analysis of the plain language of the statute, set forth below. *"The statute requires health insurers to create internal appeal mechanisms, but does not waive a health care provider's right to a jury trial...."* *Id*. (Emphasis added). The same result was reached in *Sutter v. Horizon*, Docket No. ESX-L-3685-02, N.J. Sup. Ct., Essex County, Feb. 13, 2003, *aff'd in part*, 406 N.J. Super. 86, 95 (App. Div. 2009), *aff'd after remand*, 2012 WL 2813813 (App.

---

[6] Klausner Decl., Exhibit C.

Div. 2012), _cert_. _denied_, 213 N.J. 57 (2013).[7]   After conferring with the New Jersey

Department of Banking and Insurance ("DOBI"), the court rejected Horizon's exhaustion

of remedies argument.

> In regard to the HINT and Prompt Pay [HCAPPA] Statutes, [DOBI] stated
> 'there is nothing in either HINT or Prompt Pay provisions which would
> preclude a provider who believes that he or she has not been paid in
> accordance with his or her contract with [an insurer] from seeking private
> redress for an action against the payer.

The Sutter court further noted "[i]n regard to [the Prompt Pay laws], [DOBI] stated that it

was permissive and could not reasonably be interpreted to mean the Department must

resolve all disputes between a health service corporation and a provider...." _Id_. at 8.

MHA appealed the Superior Court's decision, it has been fully briefed, and is awaiting

argument before the Appellate Division.

There is no question that HCAPPA instituted requirements that HMOs, such as

Defendant, establish internal appeal mechanisms to resolve payment disputes with health

care providers:

> A health maintenance organization ..., hereinafter the payer, **shall** establish
> an internal appeal mechanism to resolve any dispute raised by a health
> care provider regardless of whether the health care provider is under
> contract with the payer regarding compliance with the requirements of this
> section or compliance with the requirements of [_N.J.S.A._ §§17B:30-51 to
> 30-54].

_N.J.S.A._ 26:2J-8.1(e)(1).   (Emphasis added).   In contrast to the mandatory language

directing HMOs to establish an internal appeal mechanism, the same subsection specifies

that a provider's recourse to that mechanism is entirely voluntary.   "A health care provider

**may** initiate an appeal...following receipt by the health care provider of the payer's claims

determination...." _Id_.   (Emphasis added).   In the event a provider elects the HMO's appeal

---

[7] Klausner Decl. Exhibit D.

process, the HMO "***shall*** conduct a review of the appeal and notify the provider of its

determination...." <u>*Id*</u>. (Emphasis added). The statute also provides a mechanism for

arbitration where a provider's appeal is denied. HMOs "***shall*** notify" providers of adverse

decisions, which notice "***shall*** include...instructions for referring the dispute to arbitration as

provided by paragraph (2) of this subsection." <u>*Id*</u>. (Emphases added). While notification of

arbitration rights is mandatory, a provider's decision to select arbitration is again elective:

> Any dispute regarding the determination of an internal appeal conducted
> pursuant to paragraph (1) of this subsection ***may*** be referred to arbitration as
> provided in this paragraph.... Any party ***may*** initiate an arbitration
> proceeding...following the receipt of the determination which is the basis of
> the appeal....

*N.J.S.A.* §26:2J-8.1(e)(1). (Emphases added).

In enacting these provisions of HCAPPA, the New Jersey legislature intentionally

used both mandatory and permissive language to contrast the *duties* of HMOs with the

providers' *elective* remedies. "The Legislature is presumed to be familiar with judicial

construction of statutes." *State v. Burford*, 163 N.J. 16, 20 (2000). And the New Jersey

Supreme Court has spoken directly to statutory construction where a provision contains

both mandatory and permissive language. "Where a statutory provision contains both the

words 'may' and 'shall,' it is presumed that the lawmaker intended to distinguish between

them, 'shall' being construed as mandatory and 'may' as permissive. *Aponte-Correa v.

Allstate Ins. Co.*, 162 N.J. 318, 325 (2000).

United States Supreme Court precedent is in accord. "The word 'may'

customarily connotes discretion. That connotation is particularly apt where...'may' is

used in contraposition to the word 'shall.'" *Jama v. Immigration & Customs

Enforcement*, 543 U.S. 335, 346 (2005)(internal citation omitted). <u>*Accord*</u>, *Empresa

Cubana del Tabaco v. Culbro Corp.*, 541 F.3d 476, 478 (2d Cir. 2008) (distinguishing the

use of the permissive "may" in a statute as distinct from the use of the mandatory "shall"); *see also United States v. Myers*, 106 F.3d 936, 941 (10th Cir. 1997) ("[i]t is a basic canon of statutory construction that use of the word 'shall' indicates a mandatory intent."); *Forest Guardians v. Babbitt*, 174 F.3d 1179, 1187 (10th Cir. 1999) ("[t]he Supreme Court and this circuit have made clear when a statute uses the word 'shall', Congress has imposed a mandatory duty upon the subject of the command").   It is therefore beyond dispute that the administrative remedies provided by HCAPPA are elective and not mandatory.   Thus, Plaintiffs' claims under HCAPPA cannot be dismissed on the ground that they failed to exhaust their administrative remedies.

The conclusion that Plaintiffs need not avail themselves of HCAPPA's administrative remedies is also supported by the legislative history.   The purpose of HCAPPA is to protect health care providers, not insurers.   "[HCAPPA] is intended to ensure that health care providers receive timely reimbursement to which they are entitled from insurance carriers for services delivered to persons covered under health insurance policies."   Statement, Senate Bill No. 2824, State of New Jersey, 211th Legislature (Dec. 5, 2005).[8]   New Jersey case law agrees.   *N.J. Dental Ass'n v. Horizon Blue Cross Blue Shield of N.J.*, 2014 WL 2515689 at *6 (App. Div.), *cert. denied*, 219 N.J. 630 (2014)(purpose of HCAPPA is to "protect" providers by imposing procedural requirements *on insurers*).   Thus, in addition to the plain language of the statute, there is nothing in the legislative history or case law that indicates providers' existing common law rights were intended to be or were abrogated by HCAPPA.   When a legislature does intent to alter the common law, it does so explicitly.   "The rule has been declared by the

---

[8] Available at www.njleg.state.nj.us/2004/Bills/S3000/2824_11.pdf.

United States Supreme Court, as follows: 'No statute is to be construed as making any innovation upon the common law which it does not fairly express.'" *Velazquez v. Jimenez*, 172 N.J. 240, 257 (2002)(citation omitted).  Stated another way, "[i]f a change in the common law is to be effectuated, the legislative intent to do so must be clearly and plainly expressed."  *Warnig v. Atlantic City Special Servs.*, 363 N.J. Super. 563, 571 (App. Div. 2003).

Finally, New Jersey DOBI has determined that HCAPPA does not alter a provider's common law right to sue insurers.  "The HCAPPA claims appeal mechanism is intended for use by health care providers *separate and apart* from any right of claims appeal that may exist."  DOBI Bulletin No: 06-16, Health Claims Authorization, Processing and Payment Act, at *3, n.3 (N.J. DOBI July 10, 2006).[9] (Emphasis added). In 2013 DOBI reiterated that HCAPPA arbitration is not mandatory:

> COMMENT: [HCAPPA] establishes a permissive independent  external arbitration process operated by the State which includes disputes over payments including billing and coding edits or interpretations, A contractual requirement to participate in mandatory binding arbitration could be inconsistent with the HCAPPA right to pursue a remedy outside of arbitration, One commenter requested that a prohibition on mandatory binding arbitration be incorporated into the adopted rule....
>
> RESPONSE:  [DOBI] concurs that the HCAPPA establishes a *permissive* external arbitration process.

45 N.J. Reg. 651(a) (Mar. 18, 2013).  (Emphasis added).  If the plain meaning and legislative intent left any doubt, DOBI's  interpretation of HCAPPA is entitled to deference.  *N.J. Dental Ass'n*, 2014 WL 2515689 at *5-6.  The statute's administrative remedies are permissive.

---

[9] Available at www,nj.gov/dobi/bulletins/blt06_16,pdf.

**Point IV**

PLAINTIFFS' PROPOSED AMENDED COMPLAINT
<u>SUFFICIENTLY ALLEGES EXHAUSTION OF REMEDIES</u>

Even if exhaustion of remedies is a condition precedent to Plaintiffs' statutory claims, the proposed Amended Complaint contains sufficient allegations to survive dismissal. First, under New Jersey Court Rules, a plaintiff need only make general allegations that a condition precedent has been satisfied. "In pleading the performance or occurrence of conditions precedent, it is sufficient to allege generally that all such conditions have been performed or have occurred." R. 4:5-8(b); *Scocozza v. New Jersey*, 2014 WL 6674453, at *4 (D.N.J. Nov. 25, 2014) ("[g]eneralized allegations in support of conditions precedent. such as exhaustion of administrative remedies are sufficient to survive a motion to dismiss"). Plaintiffs have sufficiently alleged that they did, in fact, avail themselves of Defendant's internal appeals process. Plaintiffs allege generally that all claims included in this action were appealed internally and every such appeal was denied. Proposed Amended Complaint at ¶¶94-105.

Second, the exhaustion of remedies doctrine in New Jersey is not absolute. The "preference for exhaustion of administrative remedies is one 'of convenience, not an indispensable pre-condition.'" *Abbott v. Burke*, 100 N.J. 269, 297 (1985), <u>*citing*</u> *Swede v. City of Clifton*, 22 N.J. 303, 315 (1956). Unless the legislature "vests exclusive primary jurisdiction in an agency, a plaintiff may seek relief in our trial courts." <u>*Id*</u>. Interests that may be furthered by requiring exhaustion of remedies were identified in *City of Atlantic City v. Laezza*, 80 N.J. 255, 265 (1979). Primarily, the rule "ensures that claims will be heard, as a preliminary matter, by a body *possessing expertise in the area*." (Emphasis added.) As discussed more fully below in Point V, that interest does not exist in this case

17

because "prompt pay claims could be addressed as well or better by [the court), rather than by [DOBI], *particularly as [DOBI] has indicated that it is lacking a special expertise to address prompt pay*." *Sutter, supra*, Klausner Decl. Exhibit D.

Several additional exceptions to the exhaustion doctrine have been identified, including where only a question of law needs be resolved, where administrative remedies would be futile, when irreparable harm would result, when jurisdiction of the agency is doubtful, or when an overriding public interest calls for a prompt judicial decision. *Abbott*, 100 N.J. at 298. The sheer volume of Plaintiffs' unresolved claims, the systematic nature of Defendant's denials, and the questionable bases for non-payment of claims, all alleged in the Complaint and proposed Amended Complaint, are sufficient to preclude dismissal on the issue of futility. For example, Plaintiffs specifically allege that Defendant systematically delayed payment of claims by marking them 'pending', even though no other information was required for processing. Complaint ¶¶72-73. In *Sutter*, the court similarly held that the insurer's internal appeal process was futile because of the volume of the provider's claims and the systematic nature of the dispute precluded an impartial review. *Sutter*, Klausner Decl. Exhibit D at pp. 16-17.

Although Plaintiffs contend that exhaustion of remedies is not a condition precedent to maintaining this action, the have sufficiently alleged they availed themselves of Defendant's internal appeal process. Additionally, there are factual questions that preclude dismissal as to whether an exception to the exhaustion doctrine exists in this case. Both Defendant's systematic denial of claims and DOBI's admitted lack of expertise are sufficient to demonstrate at the pleading stage that existing administrative remedies are inadequate.

**Point V**

NEW JERSEY'S HINT ACT AND REGULATIONS
DO NOT FORECLOSE PRIVATE RIGHTS OF ACTION

Plaintiffs allege that Defendant violated New Jersey's Healthcare Information Networks and Technologies Act ("HINT Act"), *N.J.S.A.* §17B:26-9.1, and associated regulations that require payment to OON providers for (i) emergency care (*N.J.A.C.* §11:24-5.3), (ii) referrals   (*N.J.A.C.* §11:24-5.1), and (iii) covered services (*N.J.A.C.* §11:22-5.8).   This statutory scheme is often referred to as "prompt-pay."   Defendant contends that there is no private right of action for violation of the HINT Act or regulations and alternatively that Plaintiffs have not sufficiently plead such violations. Both contentions are incorrect.  New Jersey courts repeatedly and consistently hold that medical service providers have a private right of action when an insurer, liked Defendant, fails to reimburse providers timely or properly.

As alleged in Plaintiffs' Complaint, the HINT Act requires insurers to issue timely payment to providers for all "clean" claims within 30 days (if submitted electronically), and within 40 days (if submitted by other than electronic means). Complaint ¶67; *N.J.S.A.* §17B:26-9.1.  Insurers are additionally required to pay simple interest at the rate of 12% per annum on any late payments.  Complaint ¶68; *N.J.S.A.* §17B:26-9.1.   Plaintiffs clearly allege that Defendant failed to make the required payments and failed to pay interest on late paid claims.  Complaint ¶69.  Under its authority to interpret and enforce the HINT Act and to set the "standards for the payment of claims," DOBI promulgated regulations and entered orders that require insurers to (i) pay providers an amount large enough amount to ensure that the patient is held harmless

when an HMO-insured patient seeks emergency services (N.J.A.C. §11:24-5.3); (ii) pay

providers for referrals (N.J.A.C. §11:24-5.1), and (iii) pay OON providers for "covered"

services (N.J.A.C. §11:22-5.8).  *See, e.g.*, *In re Violations of Aetna*, No. A07-59 (DOBI

Sept. 2007)( insurer "must pay the non-participating provider a benefit large enough to

insure that the ... provider does not balance bill" for emergency services).[10]

Citing *R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.,* 168 N.J. 255,

272 (2001), Defendant argues that the HINT Act and associated regulations do not create

a private right of action for service providers to sue insurers.  *Gaydos* does identify

factors considered in determining whether a private right of action exists where one is not

expressly authorized by statute.  Plaintiffs must demonstrate that (1) they are members of

the class for whose special benefit the statute was enacted; (2) there is any evidence that

the Legislature intended to create a private right of action under the relevant statute; and

(3) it is consistent with the underlying purposes of the legislative scheme to infer the

existence of such a remedy.  *Id*.  Although Defendant analyzes the *Gaydos* factors and

self-servingly concludes there is no private right of action, Defendant fails to inform this

Court that New Jersey has already specifically considered this exact issue and

consistently holds there *is* a private right of action.

In *Sutter, supra*, Klausner Decl. Exhibit D, the defendant-insurer claimed there

was no private right of action and it could not be held accountable for violating *N.J.S.A.*

§17B:26-9.1, exactly as Defendant does in this case.  In a thorough opinion, the court

analyzed the necessary factors and determined there is a private right of action under the

HINT Act.  First, the *Sutter* court determined that a health care provider is "clearly a

---

[10] This legal duty is called the New Jersey "emergency room mandate."

member of a class for whose special benefit the prompt payment laws were enacted" because the statute was written  "to compel payers to promptly pay claims to providers for medical services to plan members."  Klausner Decl. Exhibit D at p. 10.  With respect to legislative intent, the court found it a closer issue, but concluded that:

> [a] common sense reading precludes a reading that the Legislature intended a right without a remedy.  Similar courts in other jurisdictions have held that healthcare providers may not be left in a situation where they have a right to timely payment and interest, but no means of enforcing those rights....  [T]he statutory and regulatory framework implies that the Legislature wanted to allow private causes of action.

*Id*. at p. 11.

Finally, the *Sutter* court held that a private right of action is consistent with the underlying purposes of the prompt pay statute.  "[I]t would seem that private causes of action, or the threat thereof, would further that goal since the Legislative wanted providers to be paid promptly, and there are 30,000 providers in the State."  *Id*. at p. 13. The court was "convinced that the legislative goals would be achieved much more effectively with a private cause of action rather than without a private cause of action...." *Id*.  The Court summed up its analysis stating succinctly "there can be no convincing argument that the Legislature believed it had created a sole exclusive remedy that would be hindered by private actions."  *Id*.

What is equally interesting about *Sutter* is that the court, with the consent of the parties, solicited the opinion of DOBI on the issues of exhaustion of remedies and whether service providers had a private right of action under the prompt pay statute.  In response to the court's inquiry, DOBI stated "there is nothing in either the HINT or Prompt Pay provisions which would preclude a provider who believes that he or she has not been paid in accordance with his or her contract with Horizon from seeking private redress for an

action against the payer." *Id*. at p. 7.  Thus, both the courts of New Jersey and the state department responsible for oversight of health insurers agree that the HINT statute does create a private right of action for service providers.

In the wake of *Sutter*, other New Jersey cases have reached a similar result.  In *Kirsch v. Horizon*, No. ESX-L-4216-05, at pp. 44, 47-48, N.J. Sup. Ct., Essex County, Oct. 21, 2005,[11] the New Jersey Superior Court again rejected an insurers contention that the HINT act does not create a private right of action.

> In reviewing the papers submitted ... as well as the opinions of Judge Rothschild in Sutter..., this Court is satisfied that most of the arguments address by [ defendant-insurer] ... were thoroughly and -and this Court believes correctly decided by Judge Rothschild....
>
> *      *      *
>
> [T]he HINT Act creates a right for doctors, such as Dr. Kirsch, it imposes a burden on Horizon to pay [12] percent late fees on all claims not paid in accordance with the statute.

The same result was reached a third time in *North Jersey Brain & Spine Center v. Health Net. Inc.*, Docket No. BER-L-5421-08, N.J. Sup. Ct., Bergen County, August 26, 2009,[12] at p. 20, where the court rejected an insurer's argument that its violations of the HINT Act and associated regulations were not privately enforceable. There the court similarly noted, "[i]n Sutter...Judge Rothschild concluded, after careful consideration, that a dismissal of a claim for a private cause of action under the Prompt Payment Act and the HINT Act was inappropriate."  Finding *Sutter's* reasoning equally applicable, the North Jersey Brain court concluded "that Defendant's Motion to Dismiss the Second Count of Plaintiff's Complaint must be denied." *Id*.

---

[11] Klausner Decl. Exhibit E.
[12] Klausner Decl. Exhibit F.

Although *dicta*, the New Jersey Appellate Division also believes there is private right of action under the HINT Act.  Echoing the analysis of Judge Rothschild in *Sutter*, the appellate court noted:

> The HINT Act may provide a private cause of action for doctors who file lawsuits to collect overdue payments from insurers, and who in that context seek to collect the statutory [twelve] percent interest penalty mandated by the HINT Act. Allowing the HINT Act to be privately enforced by doctors suing for overdue payment would appear to further the purpose of the Act by permitting the doctors, for whose benefit the statute was enacted, to recover the interest on those payments. *See* Statement to P.L.1999, c. 154 (approved July 1, 1999). We need not decide that issue here, however, because the doctors, who would have standing to raise the issue, are not before us.

*Med. Soc'y of N.J. v. AmeriHealth HMO, Inc.*, 376 N.J. Super. 48, 58-59 (App. Div. 2005).  Perhaps more important, the Legislature has amended the HINT Act several times since *Sutter* and its progeny were decided.  Had the legislature intended to foreclose a private right of action it could have done so easily and in one stroke overruled existing case law.  The legislature did not do so, and the appropriate conclusion is that this is because it always intended a private right of action under the HINT Act.  "When a statute has received contemporaneous and practical interpretation, and the statute is thereafter amended without any change in the interpreted language, the judicial construction is regarded as presumptively the correct interpretation of the law."  *Coyle v. Bd. of Chosen Freeholders*, 170 N.J. 260, 267 (2002) (internal citations omitted).

**Point VI**

PLAINTIFFS HAVE SUFFICIENTLY ALLEGED VIOALTIONS
OF THE HINT ACT AND REGULATIONS

Defendant alternatively argues that even if there is a private right of action under the HINT Act and regulations, Plaintiffs have failed to allege any violations. Both the Complaint and proposed Amended Complaint more than adequately allege such violations. As noted above, the HINT Act requires insurers to promptly pay providers for all "clean" claims. Complaint ¶67; *N.J.S.A.* §17B:26-9.1. Insurers are additionally required to pay simple interest at the rate of 12% per annum on any late payments. Complaint ¶68; *N.J.S.A.* §17B:26-9.1. Plaintiffs clearly allege that Defendant failed to make the required timely payments and failed to pay interest on late claims. Complaint ¶69. These allegations are sufficient.

Plaintiffs' proposed Amended Complaint amplifies these allegations. The proposed Amended Complaint outlines in detail Defendant's payment obligations as set forth in the New Jersey statutes (proposed Amended Complaint ¶¶45-56) and specifically alleges that Defendant (i) wrongfully failed to pay Plaintiffs for clean, covered claims (proposed Amended Complaint ¶81); (ii) wrongfully failed to pay Plaintiffs for clean, covered claims in the time required by statute and has failed to pay interest on such late payments (proposed Amended Complaint ¶¶106-107); and (iii) wrongfully failed to pay Plaintiffs for claims are submitted with CPT codes for which Defendant's own policies and procedures provide that payment shall be made (proposed Amended Complaint ¶108). Plaintiffs additionally allege that Defendant employs automated programs that mark claims as "pending" claims, i.e., puts them in a state of suspense before they are processed, even though no additional information is needed or requested from Plaintiffs.

24

This provides Defendant with a significant float - a valuable extended use of claim payment funds - and deprives Plaintiffs of the time value of their money as well as one of the incentives to treat patients at reduced rates in a managed care context.  Proposed Amended Complaint ¶¶48, 89-90, 106-107.

Defendant suggests that Plaintiffs' allegations are insufficient with respect to violations of the regulations requiring payment for emergency services, services provided as a result a referral, and covered, OON services.  *N.J.A.C.* §§11:24-5.3, 11:24-5.1, and 11:22-5.8.  Defendant argues that Plaintiffs are not entitled to usual and customary fees because Federal and state Medicaid laws cap the rate at which OON providers are to be reimbursed *for emergency services*.  First, Plaintiffs have adequately plead the referenced regulations and the violations thereof.   Complaint ¶¶22-32, ; proposed Amended Complaint ¶¶22-26, 130-133.   Second, even if there is a cap on payment for OON emergency services, Plaintiffs have alleged that they were not paid at all for such services.  Complaint ¶38; proposed Amended Complaint ¶133.  More important, any alleged Medicaid cap on emergency services is irrelevant to Plaintiffs' claims for payment for services provided through referrals and for OON covered (medically necessary) services.  Defendant does not contend that payment for such services are capped, and Plaintiffs adequately allege that they are indeed entitled to usual and customary fees for such services.  Complaint ¶¶22-28; proposed Amended Complaint ¶¶34-44.  All Plaintiffs' claims arising under the New Jersey statutes and regulations are adequately plead and should not be dismissed.

**Point VII**

<u>PLAINTIFFS ADEQUATELY PLEAD ESTOPPEL</u>

Defendant is correct in pointing out that *promissory* estoppel requires the following elements:  (i) a clear and definite promise;(ii) made by the defendant with the expectation that the promisee will rely upon it; (iii) reasonable reliance; and (iv) harm to the promisee.  Defendant's Brief at p. 17.  Defendant's explanation of equitable estoppel, however, is insufficient and the conclusion that Plaintiffs' Complaint does not state a cause of action for estoppel is therefore incorrect.  The original cause of action is premised on course of conduct.  According to Defendant, equitable estoppel is only established when there is conduct by one party that amounts to a misrepresentation of material facts intended to mislead the other party.  Defendant's Brief at p. 18.  While such conduct might give rise to a claim for equitable estoppel, what Defendant is describing is actually fraud: intentional misrepresentation of material facts, unknown to other party, intent for misled party to rely, actual reliance, and damages.  Equitable estoppel is a broader and less sinister concept.  "The essential principle of the policy of [equitable] estoppel here invoked is that one may, by voluntary conduct, be precluded from taking a course of action that would work injustice and wrong to one who with good reason and in good faith has relied upon such conduct."  *Summer Cottagers' Ass'n of Cape May v. City of Cape May*, 19 N.J 493, 503-04 (1955).  Equitable estoppel does not require an intentional misrepresentation of material facts, it only requires a change in one party's conduct that works an injustice to another party who reasonably relied on the conduct in good faith.  It can arise from *any* type of "conduct of a party, using that word in its broadest meaning as

including his spoken or written words, his positive acts, and his silence or negative omission to do anything." *State v. U.S. Steel Corp.,* 22 N.J. 341, 358 (1956). For example, in *Royal Assoc. v. Concannon*, 200 N.J. Super. 84 (App. Div. 1985), the doctrine of equitable estoppel was invoked to prevent a landlord from dispossessing a tenant for having a pet. The landlord knew about the pet and accepted rent payments from the tenant for eleven years without complaint. The court held, in part, "[t]he acceptance of rental payments not only may waive prior breaches...but viewing the effect of such a course of conduct, "principles of equitable estoppel cannot be ignored." *Royal Assoc.*, 200 N.J. at 92 (internal quotation omitted). There was no misrepresentation of material facts, simply a change in conduct (no longer accepting the tenant's pet), that was inequitable given the parties' prior conduct (acceptance of the pet).

Plaintiffs similarly allege that they relied on the course of conduct with Defendant with respect to the filing and payment of claims for OON services. That course of conduct included Defendant's allowing and paying certain claims of Plaintiffs. Based upon those payments, Plaintiffs continued to provide OON services for Defendant's enrollees. Plaintiffs allege that Defendant did not continue to pay for the services that Plaintiffs continued to perform based on the parties prior course of conduct. Complaint ¶¶105-111. While Defendant may be correct that these allegations do not adequately plead *promissory* estoppel, they are more than adequate to plead equitable estoppel. The parties' course of conduct takes the place of a specific promise and makes it inequitable for one party to unilaterally change its conduct where the other party reasonably relied on such conduct in good faith. Plaintiffs have alleged the essential principles of equitable estoppel. i.e., that Defendant voluntarily paid them for services rendered, that Plaintiffs

27

continued providing services in reliance on such payments, and that Defendant changed its conduct by failing to continue to make such payments thereby working an injustice on Plaintiffs.

Plaintiffs' proposed Amended Complaint adds a cause of action for promissory estoppel based on specific promises made by Defendant to Plaintiffs. This cause of action satisfies the elements of *promissory* estoppel as set forth in Defendant's brief. Specifically, Plaintiffs allege that (i) Defendant preapproved Plaintiffs to render services to its enrollees; (ii) these preapprovals constituted a clear and definite promise to pay for Plaintiffs' services; (iii) Defendant provided such preapprovals with the expectation that Plaintiffs would rely on them in order to provide services; (iv) Plaintiffs did in fact reasonably rely on Defendant's pre-approvals; and (v) Plaintiffs were harmed when Defendant did not pay or underpaid for pre-approved services. Proposed Amended Complaint ¶¶134-142. Plaintiffs' reliance was reasonable because preapprovals in the health care industry are generally understood to be a promise by the insurer to pay the provider for the pre-approved service. Because Plaintiffs have adequately plead both equitable and promissory estoppel, the estoppel claim in the Complaint should not be dismissed and Plaintiffs should be permitted to add their claim for promissory estoppel.

**Point VIII**

PLAINTIFFS HAVE ADEQUATELY PLEAD
UNJUST ENRICHMENT AND *QUANTUM MERUIT*

Defendant's final argument is that Plaintiffs' claims for unjust enrichment and *quantum meruit* should be dismissed because Plaintiffs have failed to allege that a benefit was conferred on Defendant and because there is a contract governing the subject matter of the dispute. Defendant's Brief at p. 21. Neither claim should be dismissed. First, it is disingenuous to suggest that Defendant is not benefitting from failing to pay Plaintiffs on their ripened obligations. Second, Plaintiffs' quasi-contractual claims cannot be dismissed on Defendant's allegation that its contract with the State of New Jersey governs Plaintiffs' claims. At the very least that is a question of fact. Moreover, even if the referenced contract proves relevant, and even if it does ultimately preclude Plaintiffs' quasi-contractual claims, it is black letter law that a plaintiff may alternatively allege contractual and quasi-contractual claims at the pleading stage. Finally, as noted above, Defendant's allegation that there is a controlling contract should permit Plaintiffs to add a breach of contract claim by way of the proposed Amended Complaint.

Disposing of the contract issue first, the existence of an allegedly controlling contract does not preclude quasi-contractual claims at the pleading stage. Although a party may not recover on both theories, plaintiffs are permitted to assert claims under both theories in the alternative. *Ass'n of New Jersey Chiropractors v. Aetna*, 2012 WL 1638166 at *11 (D.N.J. 2012). "This Court has regularly permitted claims for both unjust enrichment and breach of contract to proceed at the motion to

dismiss stage, finding that dismissal of one of these claims would be premature." *MK Strategies, LLC v. Ann Taylor Stores Corp.,* 567 F. Supp. 2d 729, 736 (D.N.J. 2008). <u>Accord</u> *Simonson v. Hertz Corp.,* 2011 WL 1205584 *7 (D.N.J. 2011)("[w]hile a plaintiff may not recover on both a breach of contract claim and an unjust enrichment claim, a plaintiff may plead alternative and inconsistent legal causes of action arising out of the same facts."); Fed. R. Civ. P. 8(d)(2); 8(d)(3).  Should Plaintiffs prove able to recover on a breach of contract claim as suggested by Defendant, then judgment dismissing the quasi-contractual claims can be entered at the appropriate time. Dismissal at the pleading stage, however, is clearly premature.

The remaining contention is that unjust enrichment and *quantum meruit* claims must be dismissed because no benefit was conferred on Defendant, but only on Defendant's enrollees.  Defendant's definition of "benefit" ignores the reality of New Jersey's Medicaid scheme.  As explained above, Defendant receives Medicare capitation payments from the New Jersey Center for Medicare and Medicaid Services ("CMS").  In exchange, it assumes full responsibility for paying the medical costs of its enrollees.  Capitation payments are set prices paid to Defendant by CMS on a per member, per month basis, regardless of whether that member incurs any covered health related expenses.  By failing to meet its statutory mandate to pay the covered medical costs of its enrollees, Defendant is conferred the benefit of keeping New Jersey's capitation payments without performing its obligations.  Defendant also benefits from Plaintiffs' services in that those services meet Defendant's statutory obligation to provide (as opposed to paying for) covered medical services.  There is no question that this non-payment is a benefit to Defendant - to the detriment of New Jersey Medicare enrollees,

service providers, and taxpayers.  While Defendant keeps the capitation payments, unpaid providers stop servicing Medicaid enrollees, and those New Jerseyans most in need are not getting the medical care they deserve and the State expects.  Defendant's suggestion that it does not benefit from Plaintiffs' services or from accepting State capitation payments for its enrollees then failing to make corresponding payments for covered services defies logic.  Plaintiffs' quasi-contractual claims should not be dismissed.


### Conclusion

Procedurally, this Court should grant Plaintiffs' cross-motion to amend their Complaint.  Included in the proposed amendment is withdrawal of Plaintiffs' federal claim, which eliminates the original ground for the Court's subject matter jurisdiction.   The amendment should also be permitted to meet Defendant's objections to the Complaint, including its claim that this case is governed by contract and its disputed position that the doctrine of exhaustion or remedies applies.  The Court can then remand this case to New Jersey state court where the same two chief issues are currently on appeal in *MHA II*.  This way, New Jersey courts can provide a consistent and definitive answer to questions of New Jersey law.  Alternatively, the Court should permit amendment and decline to dismiss any of Plaintiffs' causes of action.  Plaintiffs have thoroughly demonstrated there is no exhaustion of remedies requirement under applicable New Jersey statutes and that they do have private rights of action to recover payment for the medical services provided to Defendant and its enrollees.  Neither the relevant statutory language

nor the prevailing New Jersey case law were brought to this Court's attention in *MHA I*, and they lead to a much different result.  Plaintiffs' claims should not be dismissed.

Dated:  Hackensack, NJ
        November 6, 2017

        /s/ Jeremy Klausner
        Agostino & Associates, P.C.
        *Attorneys for Plaintiffs*
        14 Washington Place
        Hackensack, NJ 07601
        (201) 488-5400
        jklausner@agostinolaw.com